The first case this morning is Lannert v. Tourville, and we have Mr. Bagg and Mr. Grayson, and Mr. Bagg, when you're ready, please proceed. Thank you. May it please the court, counsel. My name is Thomas Magg, and I represent Charles Lannert. This is a fairly run-of-the-mill family law case. The issue in this case that's before this court today focuses on medical bill payments for a minor child. The crux of the appeal is broken down into two components. The first component is under the child support order that was entered in 2002. The respondent, Andrew Tourville, was required in order to be eligible for payment of half of the medical expenses post-insurance to provide to my client, Charles Lannert, within 30 days of the receipt of said bills or statements from the insurance company or the medical provider to provide them to my client, Charles Lannert, who in turn was then required to pay them within 30 days. In addition, in about October of 2008, there was an order entered by the Circuit Court of Clinton County finding that at that time there was no arrearage of any child support. The law in Illinois is, of course, and there's a citation to this effect in the brief, that medical payments are included in the definition of child support. Thus, as of October 2008, there was no child support arrearage which would include medical support payments. At about that same time, a bill was provided to my client for $1,280 for payment. It is the plaintiff's argument that that was subsumed in the prior order finding zero arrearage, and the copy of that order finding zero arrearage is attached to the appendix of the brief, so it's easy to find. Subsequent to that order entered finding zero arrearage, for several years no bills were provided to my client, and this is undisputed in the record. The evidence is quite clear. On cross-examination, the respondent testified that she provided no bills at any time in 2009, at any time in 2010, and in fact the record indicates no bills were provided until literally after the respondent rested her case in chief. Under the plain language of the child support order, the bills must be provided to my client within 30 days, or my client has no obligation to pay them. The record and evidence is undisputed. These were not provided within 30 days, and in fact the only bills other than the $1,280 bill from 2008 was provided literally after the case in chief was closed. Coincidentally, the respondent never sought to reopen the case in chief. Since under the plain language of the child support order, my client's obligation to pay them does not arise until 30 days after he receives them, the circuit court erred in entering judgment on those orders in favor of the respondent. In addition, even if you overlook the whole interplay between the 2002-2008 orders, in the actual evidence, the medical bills themselves were never introduced into evidence. The only thing that was introduced into evidence was a summary prepared by the respondent at the request of her counsel, so she testified. Despite repeated objections pointing out, hey, she's got to introduce medical bills, they were never offered into evidence, no foundation was laid for them. What was introduced is nothing but a summary, which is at best a demonstrative exhibit, which itself is not substantive. In a dissolution case of this nature, where one party's ordered to pay the medical bills, what do you think the proper foundation is? Is it what we would have in a personal injury case, that they'd either have to be paid, or authenticated and shown to be reasonable, would you have to go to that extent? I tendly don't know if you'd have to show, I imagine you would have to show they were reasonable, a patently unreasonable bill, I don't think, would have to be paid. But in this case, it really doesn't matter what standard the court would apply to that, because there was no attempt at foundation of any kind. But if we send it back, I'm just trying to envision if we did send this back, and we imposed the burden on the other side of calling in somebody to show these bills are reasonably expensive, this type of hearing would go up dramatically. I think it probably would go up, but we're talking about a large amount of money. Frankly, I mean, there are small claims auto rent cases that involve more amounts of money than we're talking about here, that literally require an evidence deposition for a doctor routinely. There's no other way to get around it in the personal injury context. I think that there may be some room for a fudge factor, as it were, depending on the amount of controversy, but ultimately there has to be some foundation and some authentication. Was there any discovery done prior to this with regards to these bills? There was a request for it, but candidly, the bills were not actually provided despite request until the first day of hearing. Yes, the counsel will point out that there was a break, and they were provided after they closed the case in chief. But at the end of the day, the bills themselves, despite the fact that they were in the courtroom in a blue folder about that thick, were at least at one point sitting on the witness stand, and despite the fact that I point out, Judge, the actual bills need to be admitted in depth. There wasn't even an attempt to do that. Without the medical bills or some authentication of them in the record, there is no evidence to support the trial court's judgment. So what is this statement that the wife is making that over petitioner's objections, the respondent testified that all of the health care expenses were forwarded to him, to the petitioner, with the various correspondents previously admitted? They were provided on the day of the original hearing. They were not provided prior to the original hearing. So what was the word for forwarded to then? That wouldn't have anything to do with it if it was at the hearing. That would imply to me that it was prior to the hearing. It was prior to the hearing in the sense that the court had not formally seated itself yet, but it was in the courtroom. Did you know the amounts of the bills? Was there any delineation of the amounts or the totals of the bills before hearing? In the sense of before the hearing, a few minutes before the hearing, yes, it was provided. But again, there was a break between the first hearing and the second hearing. No, I realize that, and that's common. But before you got to the courthouse, I mean, at some point in preparation of the trial, did you know the amount in controversy? No, quite frankly, I was wondering what sort of case would be presented in light of the complete lack of production of the case. Unless the court has any other questions, I mean, that's the crux of my argument on the field. Okay, thank you, Mr. Magg. Mr. Drazen? Justices, Mr. Magg, may it please the court, my name is Jim Drazen, and I represent the respondent, Angela Torvo Glenn, in this particular case. I believe I can clarify some of the questions which the court asked of Mr. Magg earlier, and I think it will shed a little bit of light on this particular situation. First of all, the parties were divorced way back in 2002, and an order was entered requiring Mr. Lanner to pay a certain amount of child support. He paid half of the medical expenses, he was supposed to pay half of the deductibles, and half of the daycare expenses. In 2008, Mr. Lanner, through a different counsel, filed a petition to modify child support. And in 2008, an order was entered by Judge Moran, which wasn't included in the appendix, but it's certainly included in the file, that Judge Moran entered an order, said the case came off for hearing on the petition to modify child support. And child support's modified based upon the agreement of the parties as to what Mr. Lanner's income was. They took his income, they multiplied it by .20, and said that's it. Then the court, in her order, also said, to the extent inconsistent herewith, the prior orders entered herein are modified to conform hereto. In all other respects, the prior orders remain in full force in effect. Nothing affected the medical bills whatsoever. Thereafter, Mr. Lanner's attorney prepared what we call, what I would call, the standard form uniform order of support. He typed it up, gave it to the judge. In that, he put down zero as owed as an arrearage to that particular point. Mr. Lanner's position, that is, because he said that zero was owed for support at that particular point in time, I no longer owe any back medical bills. Now, Ms. Torville testified at trial that on at least three different occasions, and those were admitted as exemptions, she sent to Mr. Lanner bills, packages of bills with letters saying here they were. So in answer to your question, when I said forwarded, she forwarded the bills to Mr. Lanner. Mr. Lanner testified, I got them, and I did nothing with them. I didn't pay them. All prior to the hearing. All prior to the hearing. Back in 2008. Didn't pay them, didn't do anything with them. Didn't do anything with them. So she testified, Ms. Glynn testified that based upon the fact that I'd done this previously and he did nothing, I didn't see any benefit to sending it again. Did he dispute what she said that they had been forwarded? No, no. And I'm going to get even further into those, the package of medical bills, in just a moment that Mr. Magg talks about. He didn't dispute the medical bills. He never sent any correspondence disputing the medical bills. And, of course, never sent anything. Didn't respond in any way, shape, or form. So Ms. Lanner felt she couldn't do anything with them. When she sought my counsel with regard to the issue of child support and medical bills, I said the only way you can enforce this when he's not paying is to file a petition to have him held in indirect civil contempt. Mr. Lanner's position was because of that gap, I shouldn't be found in contempt. The court agreed with him. Said, I'm not going to find you in contempt. He says, it would be incorrect to view that you don't owe the money, but it wouldn't be contemptuous. So he said, I'm not going to find you in contempt, but I am going to find that you owe the medical bills. You owe the medical bills that you were sent. So he clearly found that those medical bills were due and owing, and it was proper that they should have been filed that way. The petition for contempt, I believe, by virtue of the fact that he didn't respond to the first three, alleviated the need for her to send more, and he should have been found in indirect civil contempt also. But that's not what the court said. The court says, I can see where you could argue that maybe those aren't required, but that you didn't get the proper notice, but you still owe the bills. Mr. Torvald's position, or Mr. Lanner's position, is because I didn't get the bills within 30 days, I don't owe them. And he sets the Blissett case for that. The Blissett case stands for exactly the opposite. It says you can still be held for those medical bills long afterwards. Those medical bills don't ever go away. They still stay there. So the case that the appellant cites is actually beneficial to the appellee in this particular case. Now, with respect to those other medical bills, what happened in trial was, first of all, with regard to discovery, the actual medical bills were not requested. But the medical bills were brought to court the first hearing in January, and they were provided to counsel at that point in time. And they were given a large, a very large binder full of bills. And he was given an opportunity to look through those. Mr. Lanner and his counsel were given an opportunity to look through those. In addition to that, the court says, we'll come back at a later date and give you a chance to look and see if you dispute any of those bills. And we came back and had yet another hearing wherein those bills weren't disputed. Mr. Magda correctly says he tested, he objected again to the admission of the demonstrative exhibits, which the respondent testified itemized, summarized those bills. The court gave Mr. Lanner the opportunity to go through each and every bill and see if there was any discrepancy between the bills themselves and the demonstrative exhibit that was offered. Gave him at least two opportunities to do that. I believe it was three, but gave him at least two opportunities to do it. On all those occasions, Mr. Lanner decided, I'm not going to question those bills. I'm just going to come in now and question a third-year set. So he had ample opportunity to question bills at the first hearing, after the first hearing, and at the second hearing. Never questioned the accuracy of the paid bills. Mr. Forman also testified they were paid. How does the ability to question the bills replace the requirement of a foundation? Well, it's this way, Your Honor. I believe it's this way, Your Honor, because I think a foundation was there. What Ms. Torba was asked was, here's an exhibit. Look at it. Does that exhibit carefully and accurately reflect all of these bills? Is this a summary, an accurate summary of all these bills? Yes. And were all these bills paid? Yes. And were all these bills paid by you? Yes. Paid. Yes, they're all paid. She paid the bills. All she was looking for was reimbursement from Mr. Landry, not him to pay some bill to a doctor or to a provider. No, she wanted the money herself because she already paid it. She'd already actually paid the bills. So what the judge said, and I believe it's accurate, is a demonstrative exhibit. I believe the case law supports that, as I cited in my brief. A demonstrative exhibit, which enlightens the court on the status of a large document or large set of documents. And this was probably, I don't know, I would say probably 100 to 150 different entries, can be used provided it's relevant and provided it aids the court in determining what the actual facts were. So in that particular case, that's exactly what this demonstrative exhibit did. Ms. Torville prepared a series of exhibits which outlined the payments that she made for medical expenses, payments that were made for medical insurance, and payments that were made for dental expenses, all of which were to be reimbursed by Mr. Landry. In addition to that, the court did not give Ms. Torville her deductibles back. He gave the medical bills back and he increased the child support to what I believe is the proper amount. I don't think there's any question about the increased amount of child support. But it carefully and angrily reflected that, so much so that Judge Becker asked about it when it was objected to on numerous occasions, offered the petitioner several different opportunities to dispute the accuracy, and actually continued the case one time from January to March to give them an opportunity to determine whether or not there's a dispute, whether or not they want to put on evidence contrary to that that says, I paid the bills, I sent the checks when I got these letters, any of those things, none of them were forthcoming. Now, the only defense that Mr. Landry puts to the order of August of 2002 is, I didn't have to pay the bills. That's why I didn't answer your letter, because I didn't have to pay the bills. Because there's an order prepared by my attorney, a uniform order for support, which says no arrears is owed. And because child support and medical expenses, which really aren't the same, of course, because medical expenses never do more percentage of somebody's income, because those are all one and the same, I don't owe those anymore. I'm out for all of those items. So I think what's happened was the petitioner in this case, the appellants herein, trying to create what I call a red herring in the argument of these bills weren't actually accurate. These bills weren't right. This shouldn't have ever come in. What it did was it short-circuited or shortened the trial and aided the trial effect. And the trial effect in this particular case, Your Honors, gave ample, ample opportunity, I thought more than ample opportunity, to question the veracity of the bills, whether or not they were paid. At one point in time, Mr. Lanner argued that Ms. Torval should be required to bring in all of her checks, showing the payments that were made on these paid bills, in addition to the bills, going back some ten years to show that those bills were paid. And the court said that's not necessary. If you're going to question whether or not these bills are accurate and question whether or not these bills are paid, let's question her now. And that wasn't done. And the court says I'm going to hold them to be admissible. And I think the court properly admitted them as a monster to examine. And that concludes the appellee's argument. Thank you. Thank you. Rebuttal. Thank you, Your Honor. Whether or not my client had the opportunity to cross-examine the respondent is not the issue. The issue is whether or not the respondent at the trial court laid a sufficient foundation for her case in chief. The answer is no. There was no foundation for these records whatsoever. There was no foundation even sought or attempted. The respondent admits, and it's contained on C-345 in the record, that no medical bills whatsoever were sent to my client at any time between October 22, 2008, and March 11, 2011. March 11, 2011, the day after the respondent rested her case in chief. So there is a gap of years of no medical bills being provided. The court found, and the only explanation counsel and respondents have been able to argue on this point, is that the order was allegedly prepared by my client's former counsel. But there is an order dated October 22, 2008, saying that there is no child support or rearage. Well, what was the petition for, though? The petition was for a reduction in the amount of monthly child support that he was paid. In the petition, there was no request to eliminate medical bills, was there? I don't believe there was, but there's also no underlying record, as I understand it, of what took place in that hearing. Well, you know what the petition is, and you know what the order is. Sure, we know what the order is. On the bills, did she testify they were all paid? She may have. And she testified they were all for her, their child? I believe she probably did, yes. Is your main—your issue is they weren't marked as exhibits and admitted in? My main issue is that they were not marked and offered into evidence. As cited in my brief, the Vico-Corby-Babcock case, as well as the Grand Liquor v. Department of Revenue case, while it allows summaries, the underlying records themselves must be introduced into evidence. If this was a personal injury case and a plaintiff attempted to introduce a summary of her medical records without anything else, which is what happened in this case, it would never be allowed or tolerated. After she says they're related, they're paid, so they're reasonable, what else is the foundation? I think she has to show that they're genuine, that they were kept in the usual ordinary course and scope of the doctor's business. With these summaries that she admitted into evidence, according to her own testimony, which is very clear in the record, she took these medical bills and started going through them line by line, making a summary. This wasn't her own memory or her own testimony. This wasn't her own recollection. This is what she read off of an out-of-court document which was not introduced into evidence. Clearly, if she testified as to her own recollection, I think we have a different argument. But there is no testimony as to the witness's own recollection. Clarify for me what was really forwarded. Your opposing counsel says that all the bills were forwarded to him prior to the hearing. I believe that's what he said. The court's order indicates that a request was sent to him asking for the medical bills. So what was sent to him prior to the hearing? I think it is fair to say prior to October of 2008 that many, if not all, bills from that time period he probably had in 2008. Nothing else was provided to me or my client until the first hearing. So any bill that post-dated October 2008, and I'm certain some that predated it, were not sent. But definitely nothing past October 2008 was provided until the first day of hearing. Unless Your Honor has any other questions?  Thank you, Your Honor. Thanks to both of you for coming in and making your oral arguments. We appreciate your briefs, and we'll try to get to a decision at the earliest possible date. Thank you.